UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DANIEL ALLEN
and CATHLEEN ALLEN,

        Plaintiffs,

v.

UNITED STATES OF AMERICA,

        Defendant.
_____/

Case No. 1:21-cv-10449

Honorable Thomas L. Ludington
United States District Judge

**OPINION AND ORDER DENYING PLAINTIFFS'
MOTION FOR RECONSIDERATION**

This is a Federal Tort Claims Act[1] case stemming from the breach of the Edenville Dam in May 2020. In November 2022, Plaintiffs' complaint was dismissed on sovereign-immunity grounds. *See Allen v. United States*, 2021 WL 5331447, at *1 (E.D. Mich. Nov. 16, 2021). Plaintiffs have since filed a motion for reconsideration. ECF No. 30. Because they have not identified a clear error of law in this Court's decision, their motion will be denied.

**I.**

In May 2020, the 96-year-old Edenville Dam broke during a heavy storm, flooding thousands of nearby residences, including the home of Plaintiffs Daniel and Cathleen Allen. *Allen*, 2021 WL 5331447, at *3. Unlike other homeowners, who sued the local counties, the State, or the dam's former owner, Boyce Hydro, Plaintiffs sued the Federal Government. *Id.* at *3–4. Their theory was that the federal agency in charge of licensing the Dam, the Federal Energy Regulatory

---

[1] 28 U.S.C. §§ 1346(b), 2761 *et seq.*

- 1 -

Commission ("FERC"), proximately caused the flooding by negligently entrusting the Dam to Boyce and disregarding its duty to monitor it. *Id.* at *4.

The Government filed a motion to dismiss on sovereign-immunity grounds. As explained in the Government's motion, the same statute that required FERC to monitor dam safety—the Federal Power Act[2] (FPA)—also exempts the Government from liability for damages "occasioned" by the "construction, maintenance, or operation" of certain dams (referred to in the statute as "project works"). 16 U.S.C. § 803(c). Section 803(c) provides, in relevant part:

> Each licensee hereunder shall be liable for all damages occasioned to the property of others by the construction, maintenance, or operation of the project works or of the works appurtenant or accessory thereto, constructed under the license, and in no event shall the United States be liable therefor.

*Id.*

The parties agreed that this language conferred *some* immunity but disagreed as to its scope. Because the Edenville Dam predated the FPA and was therefore not "constructed under [Boyce's] license," the key point of contention was how far the clause "constructed under the license" should extend. *Allen*, 2021 WL 5331447, at *7. Naturally, the Government argued that the clause applied to only its last antecedent ("the works appurtenant or accessory thereto"), while Plaintiffs argued that it applied to *all* its antecedents ("the project works" *and* "the works appurtenant or accessory thereto"). *Id.*

Although both sides relied largely on a plain-meaning analysis, this Court found § 803(c) to be ambiguous and, therefore, turned to its legislative history and other extra-textual sources. *Id.* at *10–12. Those sources, specifically the Senate conference report, suggested that the purpose of § 803(c) was to ensure that "[the] licensee [would] pay *all* damages caused to the property of

---

[2] 16 U.S.C. § 791a *et seq.*

others." *Id.* at *11 (quoting H.R. REP. No. 65-1147 (1919) (Conf. Rep.)). As a result, Plaintiffs' complaint was dismissed.

Plaintiffs have since filed a motion for reconsideration arguing (1) that § 803(c) does not cover this case because Plaintiffs' damages were "occasioned" by FERC's negligence, not by the "construction, maintenance, or operation" of the Dam; (2) that this Court erroneously applied the relevant statutory canons; and (3) that the legislative history does not support the Government's interpretation. *See* ECF No. 30.

Because this Court finds that a hearing is unnecessary, it will proceed to address Plaintiffs' motion on the papers. *See* E.D. Mich. LR 7.1(h)(3) ("No response to [a motion for reconsideration] and no oral argument are permitted unless the court orders otherwise."),

## II.

In this District, motions for reconsideration of a final order are governed by Local Rule 7.1(h)(1), which states: "Parties seeking reconsideration of final orders or judgments must file a motion under Federal Rule of Civil Procedure 59(e) or 60(b)." E.D. Mich. LR 7.1(h)(1).

Under Rule 59(e), a motion to alter or amend a judgment must be brought within 28 days of the order or judgment. FED. R. CIV. P. 59(e). Rule 60(b), on the other hand, provides that a court may "relieve" a party from a final judgment or order for various enumerated reasons, including "mistake, inadvertence, surprise, or excusable neglect," and "newly discovered evidence." FED. R. CIV. P. 60(b).

Both Rules were intended to codify the common-law authority to set aside or amend a judgment under special circumstances. *See Banister v. Davis*, 140 S. Ct. 1698, 1709 (2020) (noting that "Rule 59(e) derives from a common-law court's plenary power to revise its judgment during a single term of court, before anyone could appeal," while "Rule 60(b) codifies various writs used

to seek relief from a judgment at any time after the term's expiration"); *see also* 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2810.0 (3d ed.) (discussing origin of Rule 59(e)).

Because Plaintiffs have not appealed this Court's decision, their motion is best analyzed under Rule 59(e). *See Banister*, 140 S. Ct. at 1709. "A Rule 59 motion should only be granted if there was (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Mich. Flyer LLC v. Wayne Cnty. Airport Auth.*, 860 F.3d 425, 431 (6th Cir. 2017) (citing *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010)).

Plaintiffs claim that this Court clearly erred (1) by relying on § 803(c), (2) in applying the relevant statutory canons, and (3) in concluding that the legislative history supported the Government's interpretation. *See* ECF No. 30. Yet because Plaintiffs have not shown a clear error of law in any of these respects, their motion for reconsideration will be denied.

### III.

### A.

Plaintiffs first argue that this Court erred by applying § 803(c) because Plaintiffs' damages were not "occasioned" by "the construction, operation, or maintenance" of the Edenville Dam, but by "FERC's decision to entrust the operation of the dam to Boyce." ECF No. 30 at PageID.309.

In interpreting a statute, courts must "giv[e] the words used their ordinary meaning" at "the time Congress enacted [it]." *In re Application to Obtain Discovery for Use in Foreign Proc.*, 939 F.3d 710, 717 (6th Cir. 2019). This meaning may be determined "by reference to dictionaries in use at the time." *Id.* When § 803(c) was enacted, to "occasion" something meant to "cause" it or "bring [it] about." *See* OCCASION, WEBSTER'S NEW INTERNATIONAL DICTIONARY (1930).

There is no dispute that Plaintiffs' damages were caused by the "construction, maintenance, or operation" of the Edenville Dam. Indeed, one of Plaintiff's primary allegations is that FERC disregarded its duty to ensure that Boyce could "manage, *operate*, and *maintain* the [Dam] safely." ECF No. 1 at PageID.16 (quoting 16 U.S.C. § 808(2)(B)) (emphasis added).

Accordingly, Plaintiffs' argument seems to be that § 803(c) only covers damages *proximately* caused by a dam's "construction, maintenance, or operation." But there is no evidence—textual or otherwise—to support their view. The plain meaning of the term "occasioned" is "caused," and this Court may not deviate from that meaning absent some ambiguity. *See United States ex rel. Felten v. William Beaumont Hosp.*, 993 F.3d 428, 431 (6th Cir. 2021).

Accordingly, this Court did not err by applying § 803(c).

**B.**

Plaintiffs next argue that this Court erroneously applied the relevant statutory canons; specifically, the last-antecedent rule and the canon against surplusage.

**i.**

The last-antecedent rule provides that "'a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows.'" *United States v. Mateen*, 764 F.3d 627, 631 (6th Cir. 2014) (per curiam) (quoting *Barnhart v. Thomas*, 540 U.S. 20, 21 (2003)). Accordingly, in the prior opinion, this Court explained that the modifier "constructed under the license" would normally apply only to its immediate antecedent—"the works appurtenant or accessory thereto." *Allen*, 2021 WL 5331447, at *8. Yet the comma between "thereto" and "constructed under the license" required a more nuanced approach. *Id.* Indeed, under the prevailing norms of interpretation, the comma was "evidence" that the last-antecedent rule was

not to apply and that the clause "constructed under the license" should apply equally to the "the project works" *and* "the works appurtenant or accessory thereto." *Id.*

This result would have been favorable to Plaintiffs, as it would have meant that § 803(c) did not apply to the Edenville Dam. *Id.* at *7. But this Court declined to "mechanically apply" the so-called "comma exception" due to the "strange inconsistencies" that it would create in the rest of the statute. *Id.* at *8. Notably, "construing § 803(c)'s liability rule as conditional (i.e., as dependent on whether the project works were "constructed under the license") [would] undermine[] § 803(c)'s safety rule, which unconditionally requires a licensee to "conform to . . . [rules] prescribe[d] for the protection of life, health, and property." *Id.* at *9. Similarly, this Court noted that in all the other places "where the [statute] allocate[d] some risk to the licensee, it provide[d] no special rules for project works constructed under [a] license." *Id.* For these reasons, this Court declined to adopt Plaintiffs' interpretation, which was essentially based solely on the comma. *Id.*

Plaintiffs first argue that this analysis was erroneous because it treated the last-antecedent rule as the "general rule" and the presence of a comma as the "exception." *See* ECF No. 30 at PageID.319–20. Yet that is precisely how the Supreme Court has framed the issue. *See Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) ("[A] limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows. . . . While this rule is not an absolute and can assuredly be overcome by other indicia of meaning, we have said that construing a statute in accord with the rule is 'quite sensible as a matter of grammar.'" (quoting *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 330 (1993)). And how one of the leading treatises on statutory interpretation frames the issue. *See* 2A NORMAN J. SINGER & J.D. SHAMBIE SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 47:33 (7th ed. 2021) ("Referential and qualifying words and phrases, where no

contrary intention appears, refer solely to the last antecedent. . . . A qualifying phrase separated from antecedents by a comma is evidence that the qualifier is supposed to apply to all the antecedents instead of only to the immediately preceding one.").

The principal case that Plaintiffs rely on, *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021), does not support their position. In *Duguid*, the Supreme Court analyzed the phrase "to store or produce telephone numbers to be called, using a random or sequential number generator." *Id.* at 1169. Citing the last-antecedent rule, the plaintiff argued that the phrase "using a random or sequential number generator" modified only "produce," not "store." *Id.* at 1170. The Supreme Court rejected that view because: (1) the comma before the qualifying clause "suggest[ed] that Congress intended [it] . . . to apply equally to both preceding elements"; (2) the antecedents in question—"to store or produce telephone numbers to be called"—formed "a concise, integrated clause"; and (3) the last antecedent was not "produce" but "telephone numbers to be called." *Id.*

Here, unlike in *Duguid*, the antecedents ("the project works and the works appurtenant or accessory thereto") do not form a "concise, integrated list." *Id.* Rather, they form a complex noun clause referring to two distinct structures: "the project works" and "the works appurtenant or accessory thereto." Also, unlike in *Duguid*, the phrase "the works appurtenant or accessory thereto" *is* the last antecedent in the clause. So the only similarity between this case and *Duguid* is the presence of a comma before the qualifying clause. And as the Supreme Court warned decades ago, "a purported plain-meaning analysis based only on punctuation is necessarily incomplete and runs the risk of distorting a statute's true meaning." *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 454 (1993).

Plaintiffs next attempt to explain the "strange inconsistencies" that this Court cited in rejecting their comma-focused approach. ECF No. 30 at PageID.323–27. First, they argue that

their interpretation of § 803(c) would not make licensees "conditionally liable" for damages, because licensees would always be amenable to suit, even if the project works were "constructed under a license." *Id.* at PageID.323–25. Second, Plaintiffs argue that even if their interpretation of § 803(c) is inconsistent in some way with other sections in the statute, those other sections are too dissimilar to § 803(c) to be relevant. *Id.* at PageID.325–27.

Neither argument is persuasive. Regarding the "conditional liability" issue, even if licensees would remain amenable to suit under Plaintiffs' interpretation, they would not always be exclusively or even primarily liable for damages, which was the point of this Court's discussion. *See Allen*, 2021 WL 5331447, at *9. Rather, Plaintiffs' interpretation would allow licensees to escape full liability based solely on whether the project works happened to be "constructed under the license," even though § 803(c) unequivocally requires licensees to safely operate and maintain the works regardless of when they were constructed. *See id.*

As for the other sections in the statute, Plaintiffs are incorrect that those sections are irrelevant merely because they address different issues than § 803(c). In its opinion, this Court briefly cited §§ 807(a) and 809 to note that "[i]n other places where the FPA allocates some risk to the licensee, it provides no special rules for project works constructed under the license." *Allen*, 2021 WL 5331447, at *9. Those sections, which address the Government's right to take over the project works, obviously "do not present the same concerns" as § 803(c). ECF No. 30 at PageID.325. But they do address the same general subject as § 803(c); namely, the relative rights and responsibilities of the licensee and the Government in the project works. And it has been long held that "[a] statute should be read and construed as a whole and, if possible, given a harmonious, comprehensive meaning." *United States v. Stauffer Chem. Co.*, 684 F.2d 1174, 1184 (6th Cir. 1982).

Accordingly, this Court did not err in its application of the last-antecedent rule, or in finding that Plaintiffs' interpretation produced "strange inconsistencies."

**ii.**

Plaintiffs also challenge this Court's application of the "canon against surplusage." ECF No. 30 at PageID.327. The canon against surplusage represents "the idea that 'every word and every provision [in a statute] is to be given effect [and that n]one should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence.'" *Nielsen v. Preap*, 139 S. Ct. 954, 969 (2019) (quoting ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 174 (2012)).

In its motion to dismiss, the Government argued that Plaintiffs' interpretation of § 803(c) resulted in surplusage because it made licensees liable for damages caused by the "construction" of dams "constructed under the license." *See* ECF No. 24 at PageID.227–28. Plaintiffs responded that the Government's interpretation resulted in surplusage because it applied "constructed under the license" to "the works appurtenant or accessory thereto," and, in Plaintiffs' view of the FPA, "the works appurtenant or accessory thereto" were necessarily "constructed under the license." ECF No. 20 at PageID.162–63. Both arguments were rejected, however, because neither side's interpterion could avoid the alleged redundancy. *See Allen*, 2021 WL 5331447, at *10.

Plaintiffs apparently misunderstood this analysis. They argue that "construction" is not redundant with "constructed under the license," because without the former, licensees would be liable only for the "maintenance or operation" of the project works. ECF No. 30 at PageID.327. But this Court did not hold that "construction" was redundant with "constructed under the license." Rather, it held that "even if" the two terms were redundant, the Government's interpretation resulted in the same redundancy. *See Allen*, 2021 WL 5331447, at *10.

Plaintiffs have not, however, attempted to resurrect their own surplusage argument, and rightfully so. As explained in the prior opinion, Plaintiffs' interpretation would result in essentially the same redundancy that they argue exists in the Government's interpretation. *id.* ("[L]ike the Government, Plaintiffs have not shown how to avoid the alleged surplusage; even in their view, 'constructed under the license' would still modify 'the works appurtenant or accessory thereto.'").

Accordingly, this Court did not err in applying the canon against surplusage.

### C.

Plaintiffs next argue that this Court erred in its analysis of the legislative history. By their own admission, Plaintiffs did not address § 803(c)'s legislative history in their prior briefing. ECF No. 30 at PageID.311 ("As the Court recognized, in their response to Defendant's motion to dismiss, 'Plaintiffs [did] not address Graham's amendment, the Conference Report, or any other part of § 803(c)'s legislative history.'"). It is axiomatic that parties may not seek reconsideration based on arguments that could have been raised previously. *See United States v. Huntington Nat. Bank*, 574 F.3d 329, 331 (6th Cir. 2009) ("[A] party does not preserve an argument by raising it for the first time in a motion for reconsideration or rehearing."); *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007) ("[P]arties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued."); *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) ("A motion under Rule 59(e) is not an opportunity to re-argue a case.").

Consequently, Plaintiffs have forfeited their argument on this issue. Notwithstanding that forfeiture, this Court will address Plaintiffs' argument for the purpose of completing the record.

Plaintiffs rely on essentially the same historical facts as this Court but reach the opposite conclusion. ECF No. 30 at PageID.311–18. In short, they contend that the purpose of § 803(c) was

to preserve the state-law system of liability, not to "confer immunity [on] the United States for its own affirmative acts." *Id.* at PageID.311.

But Congress's intention to preserve the state-law system of liability is precisely the point. Preserving that system meant not only that "developers would remain subject to suit," but also that "the Government, though acting as licensor, would not be treated as guarantor." *Allen*, 2021 WL 5331447, at *11. As the Senate conference report explains, Congress added the immunity clause to ensure that the "*licensee* [would] pay all damages caused to the property of others." *Id.* (quoting H.R. REP. No. 65-1147 (1919) (Conf. Rep.) (emphasis added)).

This does not mean that the Government enjoys some "general-purpose water-power immunity." *Id.* at *12. It simply means that, in "redesigning the nation's hydropower scheme," Congress was careful to ensure that the Government's licensing activity would not form the basis of a civil judgment. *Id.* at *11.

Plaintiffs' argument regarding the historical context of the statute is also unpersuasive. In its opinion, this Court explained that Plaintiffs' interpretation would have discouraged development of the nation's hydropower resources—one of the principal aims behind the FPA— because it would have made existing dams less risky than newly constructed dams. *See id.* at *12. Plaintiffs' reject this explanation, claiming that the modifier "constructed under the license" was how Congress "balance[d] [its] competing goals of incentive and accountability." ECF No. 30 at PageID.328. But Plaintiffs do not explain their reasoning in this regard, and this Court has not found any support for that view in the legislative record.

For these reasons, Plaintiffs have not shown that this Court erred in its analysis of the legislative history.

## IV.

Accordingly, it is **ORDERED** that Plaintiffs' Motion for Reconsideration, ECF No. 30, is **DENIED**.


Dated: June 8, 2022                                         s/Thomas L. Ludington
                                                            THOMAS L. LUDINGTON
                                                            United States District Judge