# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: October 03, 2023

Mr. Kevin M. Carlson
Mr. Michael L Pitt
Ms. Beth M. Rivers
Pitt, McGehee, Palmer & Rivers
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067

Mr. Zak Toomey
Office of the U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226

Re: Case No. 22-1590, *Allen, et al v. United States*
Originating Case No. : 1:21-cv-10449

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Laurie A Weitendorf
Deputy Clerk

cc: Ms. Kinikia D. Essix

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0223p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

DANIEL ALLEN; CATHLEEN ALLEN,

    *Plaintiffs-Appellants*,

  *v*.

UNITED STATES OF AMERICA,

    *Defendant-Appellee*.

No. 22-1590

Appeal from the United States District Court for the Eastern District of Michigan at Bay City.
No. 1:21-cv-10449—Thomas L. Ludington, District Judge.

Argued: June 13, 2023

Decided and Filed: October 3, 2023

Before: WHITE, THAPAR, and NALBANDIAN, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Kevin M. Carlson, PITT, MCGEHEE, PALMER, BONANNI & RIVERS P.C., Royal Oak, Michigan, for Appellants. Zak Toomey, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee. **ON BRIEF:** Kevin M. Carlson, Beth M. Rivers, Michael L. Pitt, PITT, MCGEHEE, PALMER, BONANNI & RIVERS P.C., Royal Oak, Michigan, for Appellants. Zak Toomey, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

    The court delivered a PER CURIAM opinion. THAPAR, J. (pp. 15–17), delivered a separate concurring opinion.

# OPINION

PER CURIAM. When Michigan's Edenville Dam collapsed, it caused disastrous flooding. Daniel and Cathleen Allen lived downstream, and their home was among those destroyed. The Allens sued, alleging that the United States negligently entrusted operation of the Dam to an unfit operator. The district court dismissed the case for lack of subject-matter jurisdiction, holding that the government was entitled to sovereign immunity. We affirm.

I.

The Edenville Dam was located north of Midland, Michigan. Built in 1924, it stood for nearly a century. Its two earthen embankments spanned the Tittabawassee and Tobacco Rivers, forming a 2,600-acre reservoir called Wixom Lake.[1]

For many decades, the Dam operated unlicensed. Then, in 1998, the Federal Energy Regulatory Commission ("FERC") issued a license to the Wolverine Power Corporation ("Wolverine") to operate the Edenville Dam. *See Wolverine Power Corp.*, 85 FERC ¶ 61,063 (1998), 1998 WL 721604, at *1, *18. A year later, FERC directed Wolverine to increase the Edenville Dam's spillway capacity.[2] *Boyce Hydro Power, LLC*, 164 FERC ¶ 61,178 (2018), 2018 WL 4350809, at *2.

But Wolverine soon became insolvent. So in 2003, Synex Michigan, LLC, purchased Wolverine's license to operate the Dam. And just a few years later, Synex became Boyce Hydro Power, LLC ("Boyce").

Once Boyce took over, it promised to increase spillway capacity. But it failed to deliver on that promise. *Id.* at *4. Further, Boyce committed numerous other regulatory violations,

---

[1]Because this is an appeal of a dismissal order, we take as true the facts alleged in the complaint. *See Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).

[2]A spillway is "a passageway through which surplus water escapes" from a dam. *Spillway*, Dictionary.com, https://www.dictionary.com/browse/spillway (last visited May 31, 2023).

including conducting unauthorized repairs, dredging, and land-clearing; failing to file a public-safety plan; failing to construct proper recreation facilities; and failing to properly monitor water quality. *Id.* at *2–5. So in September 2018, FERC revoked Boyce's license. Jurisdiction over the Edenville Dam then passed from FERC to Michigan's Department of Environmental, Great Lakes, and Energy ("EGLE"), which regulates over 1,000 dams and is authorized to oversee their safe maintenance and construction. EGLE inspected the Dam and found it to be in "fair" condition, so it permitted Boyce to continue operating the Dam. R. 15-3 Pg. ID 119.

Then, in late May 2020, heavy rain began to flood the Tittabawassee River. And on the evening of May 19, 2020, the Tittabawassee portion of the Edenville Dam collapsed, causing another dam further downstream to fail as well. Thousands of local residents (including the Allens) were forced to evacuate as floodwaters destroyed their homes.

Soon after the flood subsided, many of these residents sued Boyce. Boyce filed for bankruptcy, and a court approved its bankruptcy plan on February 25, 2021. The next day, the Allens brought this suit under the Federal Tort Claims Act for damages and restitution from the United States, arguing that FERC negligently entrusted Boyce with the Edenville Dam.[3]

The district court dismissed the case for lack of subject-matter jurisdiction, holding that the United States was entitled to sovereign immunity. The Allens timely appealed.

II.

The question is whether the United States has waived its sovereign immunity. First, we review the relevant statutes. Then, we interpret the scope of the immunity provision in the Federal Power Act ("FPA"). Based on that provision, we hold that the United States has not consented to suit.[4]

---

[3]The Allens never sued the State of Michigan.

[4]Because we lack jurisdiction over this suit, we cannot address the Allens' argument that FERC violated a mandatory statutory duty.

A.

In 1946, Congress passed the Federal Tort Claims Act ("FTCA"), expressly waiving the federal government's sovereign immunity in certain tort suits. *Brownback v. King*, 141 S. Ct. 740, 746 (2021). An FTCA claim must be: (1) "against the United States," (2) "for money damages," (3) "for injury or loss of property, or personal injury or death," (4) "caused by the negligent or wrongful act or omission of any employee of the Government," (5) "while acting within the scope of his office or employment," (6) "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.* (quoting 28 U.S.C. § 1346(b)).

Although the FTCA is broad, it does not waive sovereign immunity for every tort suit against the government. *See, e.g.*, 28 U.S.C. § 2680(h) (retaining immunity for intentional torts). And other statutes explicitly assert sovereign immunity—even in suits where the FTCA might otherwise waive sovereign immunity. One example is the FPA, which Congress enacted in 1920 to regulate the development of hydroelectric power. *See* 16 U.S.C. §§ 791a–823g. The FPA enables the government to issue licenses to operate hydroelectric dams. *Id.* § 797(e). And as a condition of licensing, the statute specifies that each licensee "shall be liable for all damages occasioned to the property of others by the construction, maintenance, or operation of the project works or of the works appurtenant or accessory thereto, constructed under the license *and in no event shall the United States be liable therefor*." *Id.* § 803(c) (emphasis added).

That provision of the FPA forms the center of this suit. It is a specific provision asserting the government's immunity in a particular category of cases. The FTCA, by contrast, is a general waiver of immunity in tort. And when conflicting statutes both appear to govern an issue, the "[s]pecific terms prevail over the general." *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 228–29 (1957) (quoting *D. Ginsberg & Sons v. Popkin*, 285 U.S. 204, 208 (1932)). Thus, if Section 803(c) applies, then the licensee, rather than the government, is liable. On the other hand, if the FTCA governs this suit, the government could be on the hook.

Here, all agree that Section 803(c) immunizes the government from damages suits resulting from "the construction, maintenance, or operation" of at least *some* licensed dams. The

only question is which dams.  If the Edenville Dam is covered by the terms of Section 803(c), then the government is immune from suit for damages caused by its "construction, maintenance, or operation."  If not, then the Allens can proceed against the United States under the FTCA.

B.

As always, "we start with the text."  *See Babb v. Wilkie*, 140 S. Ct. 1168, 1172 (2020).  Section 803(c) reads as follows:

> Each licensee hereunder shall be liable for all damages occasioned to the property of others by the construction, maintenance, or operation of the project works or of the works appurtenant or accessory thereto, constructed under the license and in no event shall the United States be liable therefor.

16 U.S.C. § 803(c).  The parties' competing interpretations focus largely on one clause, "constructed under the license."

What does "constructed under the license" modify in Section 803(c)?  The answer to that question is critical because the Edenville Dam was not "constructed under the license"—it was constructed without a license in 1924.  If "constructed under the license" modifies both "project works" and "works appurtenant or accessory thereto," then licensees are liable—and the government is immune—in suits for damages caused by dams (or other "project works") *only if* those structures were initially constructed under a federal license.  But if "constructed under the license" modifies just its immediate antecedent, "works appurtenant or accessory thereto," then licensees' liability is broader, as is the government's immunity.  In that scenario, licensees are liable for *any* damages caused "by the construction, maintenance, or operation of the project works," and the United States retains its sovereign immunity for the same—regardless whether the project was initially constructed under a federal license.

Only one other circuit has faced this issue.  In a case involving a dam that was not constructed under a federal license, the Ninth Circuit held that the FPA "exempts the United States from liability."  *Skokomish Indian Tribe v. United States*, 410 F.3d 506, 511–12 (9th Cir. 2005).  We agree.

1.

The FPA's text supports the conclusion that "constructed under the license" modifies only "works appurtenant or accessory thereto." *See* 16 U.S.C. § 803(c).

"[O]rdinarily," we read "a limiting clause or phrase" to modify "only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). We call this the "rule of the last antecedent." *Lockhart v. United States*, 577 U.S. 347, 351 (2016) (quoting *Barnhart*, 540 U.S. at 26). And although the rule is not absolute, we "typically" apply it—unless the "context or the spirit of the entire writing" suggests otherwise. *Id.* (quoting Black's Law Dictionary 1532–33 (10th ed. 2014)). Why? Because "[t]he rule reflects the basic intuition that when a modifier appears at the end of a list," an ordinary reader would "apply that modifier only to the item directly before it." *Id.*

Here, the phrase "works appurtenant or accessory thereto" immediately precedes "constructed under the license," whereas the phrase "project works" is more remote. Thus, applying the last-antecedent rule, the modifier applies only to "works appurtenant or accessory thereto." 16 U.S.C. § 803(c); *see* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 144 (2012). That is the most natural reading of the sentence.

Moreover, the repetition of the preposition "of" in "*of* the project works or *of* the works appurtenant or accessory thereto" suggests that the modifier reaches only its immediate antecedent. 16 U.S.C. § 803(c) (emphasis added); *cf. also* Scalia & Garner, *supra*, 148–49 (describing same effect if a determiner is repeated before the second element in the series). That repetition "tends to cut off the modifying phrase so that its backward reach is limited," *id.* at 149, further indicating that "constructed under the license" reaches only as far back as "works appurtenant or accessory thereto."

2.

And reading Section 803(c) in context confirms that "constructed under the license" modifies only "works appurtenant or accessory thereto." 16 U.S.C. § 803(c). A "fundamental canon of statutory construction" requires us to read words in context, "with a view to their place

in the overall statutory scheme." *West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)). And "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). Here, reading the words of Section 803(c) in context supports our conclusion.

a.

Our interpretation of the second sentence of subsection (c) is consistent with the rest of Section 803. Start with the first sentence of subsection (c), which until now has escaped our examination. It reads:

> That the licensee shall maintain the project works in a condition of repair adequate for the purposes of navigation and for the efficient operation of said works in the development and transmission of power, shall make all necessary renewals and replacements, shall establish and maintain adequate depreciation reserves for such purposes, shall so maintain, and operate said works as not to impair navigation, and shall conform to such rules and regulations as the Commission may from time to time prescribe for the protection of life, health, and property.

16 U.S.C. § 803(c).

In short, the FPA imposes many requirements for "project works" on "licensees." *Id.* By definition, a licensee under the FPA has a *licensed* "project work." And as we will discuss further, *see infra* II.B.2.b, that means FERC has jurisdiction over that "project work." So the FPA imposes sweeping requirements on the licensees over whom FERC has jurisdiction. And there is no qualifier in this first sentence of Section 803(c). That is, there is no requirement that the "project works" be "constructed under the license" for purposes of the duties imposed on licensees.

And the rest of Section 803 is of a piece. Section 803 lists numerous conditions for obtaining a license from FERC to operate a dam or similar project. *See* 16 U.S.C. § 803 ("Conditions of license generally"). But no condition distinguishes between licenses issued before and licenses issued after the project was constructed. It would be strange as a logical

matter if Congress imposed so many duties for "project works"—regardless of whether they were constructed under the license—and yet cabined damages to "project works" constructed under the license.

So to read the two sentences of 16 U.S.C. § 803(c) in harmony with each other and with the rest of Section 803, we apply "constructed under the license" only to "of the works appurtenant or accessory thereto." *See* A. Scalia & B. Garner, *supra*, 180 (2012) ("The provisions of a text should be interpreted in a way that renders them compatible, not contradictory"); *see also, e.g.*, *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1887–89 (2019) ("Although this is a close question of statutory interpretation, on the whole we find Parker's approach more persuasive because 'the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" (quoting *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012))).

b.

Our interpretation is also consistent with the "broader context of the statute as a whole." *Robinson*, 519 U.S. at 341. That's for three reasons.

First, the phrase "constructed under the license" appears only once in the FPA: in Section 803(c), where it is immediately preceded by "works appurtenant or accessory thereto." The phrase "project works," by contrast, appears numerous times throughout the statute. But the statute never differentiates between project works that were "constructed under the license" and those that were not. *See, e.g.*, 16 U.S.C. §§ 806, 807, 808(f). Indeed, for example, Section 809, which addresses temporary government use of project works for national safety, does apply to project works "constructed, maintained, or operated under" a license, treating all three conditions the same. *Id.* § 809.

Second, many FPA provisions impose duties, costs, and responsibilities on the licensee alone. None of these provisions distinguishes between project works that were constructed under a license and those that were not. *See, e.g.*, 16 U.S.C. § 803(c) (requiring licensee to "make all necessary renewals and replacements" to maintain project works in adequate condition); *id.* § 804 (requiring licensee to bear costs of constructing certain navigation facilities, "without

expense to the United States"); *id.* § 811 (requiring "construction, maintenance, and operation by a licensee at its own expense" of "lights," "signals," and "fishways" as directed by the government). Instead, these provisions impose duties, costs, and responsibilities solely on the licensee (regardless of whether the project was constructed under a license), and that is done in exchange for the licensee's exclusive and profitable right to use the project works to generate hydroelectric power. *See* Oral Arg. at 25:05–27:15. Thus, Section 803(c) would be an outlier if we were to interpret it to split liability for damages between licensees (for project works "constructed under the license") and the United States (for project works *not* "constructed under the license").

Third, the FPA as a whole reflects FERC's limited jurisdiction, and those jurisdictional limits are in accord with our interpretation of Section 803(c). Under the FPA, FERC's licensing authority is limited to dams and other "project works" on "bodies of water over which Congress has jurisdiction under its authority to regulate commerce." 16 U.S.C. § 797(e); *see id.* § 796(12) (explaining that "project works" are the "physical structures of a project").

"It appears to be well settled that under the definition of 'project works,' FERC's licensing authority ends at 'the point of junction with the distribution system.'" *United States v. S. Cal. Edison Co.*, 413 F. Supp. 2d 1101, 1110 (E.D. Cal. 2006).[5] So baked into the definition of "project works"—the subjects of FERC licensing—is the idea that "project works" come *before* (not after) the "point of junction with the distribution system"—that is, they fall squarely within FERC's jurisdiction. *See N.Y. Power Auth.*, 98 FERC ¶ 61,033, ¶ 61,095 (2002), 2002 WL 61991, at *1 ("If a project work does not meet the [FPA's] definition, it is not subject to the Commission's jurisdiction and therefore does not belong in the project license."). What's more, if a structure is a "project work," it must have FERC's stamp of approval—regardless of whether it was constructed before or after the existence of the FPA. *See* 16 U.S.C. § 817(1).

---

[5]*See Lake Ontario Land Dev. & Beach Prot. Ass'n v. F.P.C.*, 212 F.2d 227, 232 (D.C. Cir. 1954); *see also* 16 U.S.C. § 796(11) (explaining that a "project" is the "unit of improvement or development" consisting of all the project works leading to the "point of junction with the distribution system"); *S. Cal. Edison Co.*, 413 F. Supp. 2d at 1115 ("The point of demarcation between licensable and unlicensable equipment is the 'point of junction with the distribution system or with the interconnected primary transmission system.'"); *Montana Power Co. v. Fed. Power Comm'n*, 112 F.2d 371, 373–74 (9th Cir. 1940).

All this to say, "project works" are at the heart of FERC's jurisdiction. And it doesn't matter whether they were constructed before or after the enactment of the FPA.

This matters for our interpretation of the other phrase in 16 U.S.C. § 803(c): "of works appurtenant or accessory thereto." The FPA does not define this phrase. But here is what we know. Like project works, "appurtenant works"[6] are part of a "project" too. *Id.* § 796(11). But unlike "project works," which are at the heart of FERC's jurisdiction—regardless of whether they were constructed under the license—only certain works appurtenant are within FERC's jurisdiction. That is, some pieces "of equipment might . . . be considered appurtenant to a project work" but be "beyond the reach of FERC's jurisdiction" because that equipment goes beyond the "point of junction with the distribution system." *S. Cal. Edison Co.*, 413 F. Supp. 2d at 1110. In other words, some works appurtenant might fall outside the bounds Congress prescribed and so may be outside FERC's jurisdiction. So under the FPA, FERC has jurisdiction over some works appurtenant (those that fall *before* the point of junction with the distribution) and lacks jurisdiction over others (those that fall *after* that point).

With that distinction in mind, it makes sense why "constructed under the license" would modify "of works appurtenant to or accessory thereof" and not "of project works." It goes back to jurisdiction. That is, FERC has jurisdiction over all "project works"—regardless of whether they were constructed under the license. Not so with the mixed bag of "works appurtenant" because those structures aren't necessarily before the point of junction with the distribution system. And limiting liability to "of works appurtenant or accessory thereto" to the subset of that category that was "constructed under the license" allowed Congress to impose damages on licensees for those appurtenant works over which FERC certainly had jurisdiction. Accordingly, Congress left liability to state law for appurtenant works outside FERC's jurisdiction. And our read of the statute tracks FERC's jurisdiction throughout the rest of the statute.[7]

---

[6]Section 803(c) calls them "works appurtenant." Section 796(11) calls them "appurtenant works." No one has argued that the two are different, and we treat them the same for purposes of this analysis.

[7]*See California v. FERC*, 495 U.S. 490, 497 (1990) (explaining that the court "give full effect to evidence that Congress considered, and sought to preserve, the States' coordinate regulatory role in our federal scheme"); *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 95 (2d Cir. 2012) ("Our independent review of the FPA's text, structure, and history reveals no evidence that Congress intended to curb the

In short, Congress limited the category of "works appurtenant" under 16 U.S.C. § 803(c) to those structures "constructed under the license"—that is, to those works that came before the "point of junction with the distribution system" and over which FERC had jurisdiction. Congress did not use a similar qualifier for "project works" because FERC has jurisdiction over all "project works," regardless of whether they are constructed under the license.

For these reasons, reading Section 803(c) in the "broader context of the statute as a whole" confirms our conclusion that "constructed under the license" modifies only "works appurtenant or accessory thereto." *See Robinson*, 519 U.S. at 341; 16 U.S.C. § 803(c).

3.

The Allens offer two textual counterarguments, but we find neither persuasive.[8]

a.

For starters, the Allens contend we should apply the series-qualifier canon instead of the last-antecedent canon. The series-qualifier canon provides that if "there is a straightforward, parallel construction that involves all nouns or verbs in a series," then "a modifier at the end of the list 'normally applies to the entire series.'" *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1169 (2021) (quoting Scalia & Garner, *supra*, at 147). But there are two reasons to doubt that the series-qualifier canon applies here.

---

authority of states to regulate and assess non-licensed, non-hydropower-project properties such as National Grid's vacant parcels—an authority that falls within the states' traditional powers."); *cf. FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 266 (2016), as revised (Jan. 28, 2016) ("Alongside those grants of power, however, the Act also limits FERC's regulatory reach, and thereby maintains a zone of exclusive state jurisdiction."); *Coal. for Competitive Elec., Dynergy Inc. v. Zibelman*, 906 F.3d 41, 46 (2d Cir. 2018) ("The FPA establishes a collaborative scheme between the states and federal government to regulate electricity generation."); *FERC v. Hope Nat. Gas Co.*, 320 U.S. 591, 612 (1944) ("As we have said, the Act does not intrude on the domain traditionally reserved for control by state commissions[.]"); *N. Shore Boom & Driving Co. v. Nicomen Boom Co.*, 212 U.S. 406, 412 (1909) (pre-Federal Power Act case explaining that "the river in question is a navigable stream, entirely within the state of Washington, and, in the absence of any statute by Congress, a state has plenary power in regard to such waters").

[8]The Allens also point to legislative history that they assert supports their interpretation of Section 803(c). But when statutory text is clear, we need not consult legislative history. *See Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1814 (2019) ("[E]ven those of us who believe that clear legislative history can 'illuminate ambiguous text' won't allow 'ambiguous legislative history to muddy clear statutory language.'" (quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 572 (2011))). And, in any event, they fail to make any compelling argument regarding legislative history.

First, the Allens argue that the statute includes "a straightforward parallel construction," indicating that the modifier at the end of the list "applies to the entire series." *Facebook*, 141 S. Ct. at 1169 (quoting Scalia & Garner, *supra*, at 147). But it is less than certain that the series at issue—"of the project works or of the works appurtenant or accessory thereto"—qualifies as the sort of "concise, integrated clause" that justifies the application of the series-qualifier canon. *Facebook*, 141 S. Ct. at 1169; *see also Jama v. ICE*, 543 U.S. 335, 344 n.4 (2005) (using "receives, possesses, or transports" to illustrate the concept of an "integrated list"). At the very least, in Section 803(c), "it takes more than a little mental energy to process the individual entries in the list, making it a heavy lift to carry the modifier across them all." *Lockhart*, 577 U.S. at 351. And that is evidence that applying the modifier to both items would "stretch the modifier too far." *Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 138 S. Ct. 1061, 1077 (2018) (cleaned up).

Second, the Allens highlight that the modifier "constructed under the license" is separated from its antecedents by a comma, demonstrating that it should apply to both antecedents. Appellants' Br. 34. In their view, this is "evidence that the qualifier is supposed to apply to all the antecedents instead of only to the immediately preceding one." *Facebook*, 141 S. Ct. at 1170 (citation omitted); *see also* Scalia & Garner, *supra*, at 161–62. Although it is true that the comma favors the Allens' interpretation, they assign too much weight to this piece of punctuation. The comma is merely one piece of evidence that must be weighed against others to determine the meaning of the statute. After all, we must be careful not to rest our entire analysis on a single comma—the Supreme Court has warned that "a purported plain-meaning analysis based only on punctuation is necessarily incomplete and runs the risk of distorting a statute's true meaning." *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 454 (1993).

For these reasons, we conclude that the last-antecedent rule is the better fit. Nothing about the "context or the spirit of the entire writing" requires us to depart from the "typical[]" rule. *Lockhart*, 577 U.S. at 351 (quoting Black's Law Dictionary 1532–33 (10th ed. 2014)).

b.

The canon against surplusage does not require a different result either. This canon provides that "every word and every provision [of a statute] is to be given effect and that none should needlessly be given an interpretation that causes it . . . to have no consequence." *Nielsen v. Preap*, 139 S. Ct. 954, 969 (2019) (cleaned up). "The canon against surplusage is not an absolute rule," *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013), and "instances of surplusage are not unknown," *id.* (quoting *Arlington Central Sch. Dist. Bd. of Ed. v. Murphy*, 548 U.S. 291, 299 n.1 (2006)).

According to the Allens, if the government is immune from damages resulting from licensed and unlicensed dams alike, then the modifier "constructed under the license" carries no force. But that is not true. Although the phrase "constructed under the license" does not affect the more remote antecedent "project works," it *does* modify the last antecedent, "works appurtenant or accessory thereto." Thus, our interpretation does not "render that statutory language meaningless." Reply Br. 8. It merely narrows the clause's effect, limiting the licensee's liability in cases about appurtenances *not* constructed under the license. And some appurtenant works will fall into that category. In FERC's view, appurtenances must be related to the primary and secondary purposes of the FPA to warrant federal licensing. Structures related to purely local concerns do not qualify. And the FERC license itself will identify which appurtenances are licensed and which are not, often using diagrams to accomplish that end.

The Allens also contend that our interpretation creates surplusage because it duplicates an effect already achieved by another part of the statute. The FPA permits FERC to issue licenses only "for the purpose of constructing, operating, and maintaining dams, water conduits, reservoirs, power houses, transmission lines, or other project works." 16 U.S.C. § 797(e). And the statute defines "project works" as "the physical structures of a project." *Id.* § 796(12). Thus, the Allens claim that if the phrase "constructed under the license" modifies only "works appurtenant or accessory thereto," then it has "an effect already achieved" by the FPA's limits on FERC's licensing authority. *See* Appellants' Br. 17–18 (quoting Scalia & Garner, *supra*, at 176). However, as the district court noted, there is no basis for assuming that any and all appurtenances must have been constructed under the license. Moreover, the Allens' interpretation fails to avoid

No. 22-1590   *Allen v. United States*   Page 14

the surplusage, as they, too, read "constructed under the license" to modify "works appurtenant or accessory thereto." Thus, the Allens' surplusage arguments fail to persuade.

\*   \*   \*

For these reasons, we hold that "constructed under the license" modifies only its immediate antecedent, "work appurtenant or accessory thereto," making the licensee liable—and the government immune—for damages caused by project works, whether or not those project works were "constructed under the license."

Here, that means the United States is immune. Instead of holding the government liable for disasters like the Edenville Dam flood, Section 803(c) imposes liability on the licensees who build and manage hydropower projects. To be sure, that design is cold comfort when the licensee is bankrupt, and the claimants have experienced a devastating injury. But we cannot modify that design—only Congress can. Because the law entitles the government to sovereign immunity, we affirm.

## CONCURRENCE

THAPAR, Circuit Judge, concurring. I agree with the panel that "constructed under the license" in Section 803(c) modifies only "works appurtenant and accessory thereto." Thus, the United States is immune from suit. For those who think it's a close call on the plain text alone, there's one other interpretive tool that reinforces the panel's conclusion: the presumption against waivers of sovereign immunity.

This presumption is a "clear-statement rule." *Fin. Oversight & Mgmt. Bd. for P.R. v. Centro do Periodismo Investigativo, Inc.*, 143 S. Ct. 1176, 1183 (2023). It requires Congress to "unequivocally express[]" a waiver of sovereign immunity "in statutory text" before we'll enforce it. *Gaetano v. United States*, 994 F.3d 501, 506 (6th Cir. 2021) (quoting *FAA v. Cooper*, 566 U.S. 284, 290 (2012)). The rule has a long historical pedigree—it follows from an established principle of Anglo-American law. *See* Amy Coney Barrett, *Substantive Canons and Faithful Agency*, 90 B.U. L. Rev. 109, 145–150 (2010). As Justice Story articulated it: "It is a general rule in the interpretation of legislative acts not to construe them to embrace the sovereign power o[f] government, unless expressly named or included by necessary implication." *United States v. Greene*, 26 F. Cas. 33, 34 (Story, Circuit Justice, C.C.D. Me. 1827) (No. 15,258).

Why require Congress to speak clearly when it waives sovereign immunity? Because it is rarely the "legislative intention" to do so. *United States v. Hoar*, 26 F. Cas. 329, 330 (Story, Circuit Justice, C.C.D. Mass. 1821) (No. 15,373); *see also* Barrett, *supra*, at 149 & n.186. Moreover, the presumption against waivers of sovereign immunity "operates to protect foundational constitutional guarantees." *West Virginia v. EPA*, 142 S. Ct. 2587, 2616 (2022) (Gorsuch, J. concurring). Because the Constitution "incorporates the doctrine of sovereign immunity," our application of this clear-statement rule both operates to "enforce that doctrine," *id.*, and assists us in acting "as faithful agents of the Constitution," *id.* (quoting Barrett, *supra*, at 169).

How does that rule operate in this case? Here, two statutes are at issue: First is the FTCA, which everyone agrees unequivocally waives the government's sovereign immunity in many tort suits. Second is Section 803(c), which everyone agrees expressly *asserts* the government's immunity in some number of cases. *See* 16 U.S.C. § 803(c) (". . . and in no event shall the United States be liable therefor."). The parties debate how these statutes interact. In other words, the question is how far the FTCA extends—does it apply in suits for damages caused "by the construction, maintenance, or operation" of "project works" that were not "constructed under the license," or are those suits instead covered by the assertion of immunity in Section 803(c)?

Thus, the question is fundamentally about the scope of the waiver in the FTCA. And that's where the presumption comes in. We require that the "scope of Congress' waiver be clearly discernible from the statutory text." *Cooper*, 566 U.S. at 291. If it isn't, "then we take the interpretation most favorable to the government." *Id.*; *see also United States v. Certain Land Situated in the City of Detroit*, 361 F.3d 305, 307 (6th Cir. 2004) ("A waiver of the Government's sovereign immunity will be strictly construed, in terms of scope, in favor of the sovereign." (cleaned up)). That means the Allens must demonstrate that the FTCA's text "unequivocally" extends to this case. *Lane v. Pena*, 518 U.S. 187, 192 (1996). And they haven't cleared that high bar.

To be sure, the Supreme Court has called the presumption against waivers of sovereign immunity "unhelpful" when interpreting those exceptions listed within the FTCA itself. *See Kosak v. United States*, 465 U.S. 848, 853 n.9 (1984). That's because the FTCA "waives the Government's immunity from suit in sweeping language," and "unduly generous interpretations of the exceptions run the risk of defeating the central purpose of the statute." *Dolan v. USPS*, 546 U.S. 481, 491–92 (2006) (cleaned up). *But see id.* at 498 (Thomas, J., dissenting) (concluding that the "well-established rationale for construing a waiver in favor of the sovereign's immunity . . . applies with equal force to the construction of an exception to that waiver"). Here, however, we aren't interpreting an exception listed within the FTCA. We're interpreting an express *assertion* of immunity that Congress enacted in an entirely different statute (and which survived the FTCA's enactment). *Cf. Fourco Glass Co. v. Transmirra Prods.*

*Corp.*, 353 U.S. 222, 228–29 (1957). Thus, the presumption against waivers of sovereign immunity remains helpful here.

For these reasons and all the others stated in the panel opinion, I conclude that the United States is immune.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 22-1590

DANIEL ALLEN; CATHLEEN ALLEN,

    Plaintiffs - Appellants,

v.

UNITED STATES OF AMERICA,

    Defendant - Appellee.

**FILED**
Oct 03, 2023
DEBORAH S. HUNT, Clerk

Before: WHITE, THAPAR, and NALBANDIAN, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk